UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JULIAN EDELMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 1:26-CV-12058 |
| v. | ) | |
| | ) | |
| ASSAF SWISSA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO TRANSFER**

**ANGEL KELLEY, D.J.**

Plaintiff Julian Edelman brings this state law action against Defendant Assaf Swissa, asserting claims for unjust enrichment, breach of fiduciary duty, and promissory estoppel based on Plaintiff's alleged contributions to Defendant's digital marketing company, Superdigital LLC. [Dkt. 1-1]. Defendant moves to transfer this action under 28 U.S.C. § 1404(a) to the U.S. District Court for the Southern District of Florida, or, in the alternative, the District of Delaware. [Dkt. 11]. Plaintiff opposes the Motion. [Dkt. 15]. For the following reasons, Defendant's Motion to Transfer is **DENIED**.

**I.      BACKGROUND**

Unless otherwise noted, all facts are drawn from the Complaint and the parties' briefing on the Motion to Transfer. Plaintiff Julian Edelman is a former professional athlete who played for a popular American football team, the New England Patriots, from 2009 to 2021. [See Dkt. 1-1 ¶ 27]. During this twelve-year period and until September 2022, Plaintiff resided in Massachusetts. [See Dkt. 15 at 7]. At the time, Plaintiff received haircuts at a barber shop owned

1

by Pini Swissa, Defendant Assaf Swissa's father. [Dkt. 1-1 ¶ 28].  In or around July 1, 2013, Defendant founded Superdigital LLC, a Massachusetts-based digital advertising company. [Id. ¶ 35].  Recognizing Plaintiff's fame and popularity, Defendant asked his father to pitch the company's social media management services to Plaintiff during one of his haircuts. [Id. ¶ 36]. Plaintiff accepted the pitch and became Superdigital's first client. [Id. ¶ 37].

Shortly after, in addition to being a Superdigital client, Plaintiff acted as an early business partner, directly collaborating with Defendant in growing the business.  Plaintiff contributed to Superdigital's content and merchandise, including efforts to grow his personal brand and social media accounts. [Id.].  Defendant likewise promoted Plaintiff's contributions, allegedly capitalizing on Plaintiff's fame by featuring Plaintiff in business pitches to prospective clients and investors, representing that he and Plaintiff "owned Superdigital together," and marketing that Plaintiff would work directly with clients if they hired Superdigital. [Dkt. 15 at 4].  He also promoted Plaintiff in Superdigital's videos, which generated revenue and visibility for the company. [Dkt. 1-1 ¶ 41].

As the company grew, Defendant sought to scale the client base beyond social media influencers. [Id. ¶ 44].  He asked Plaintiff to introduce him to larger corporate clients, who Plaintiff connected with through his Patriots career. [See Dkt. 15 at 5].  Plaintiff agreed to facilitate such introductions, including with Massachusetts and New England-based entities such as Papa Gino's and D'Angelos Grilled Sandwiches; Hasbro, Inc.; the Wynn Casino's Encore Boston Harbor casino; Truly Hard Seltzer, owned by Boston Beer Company; and Dunkin' Donuts. [Dkt. 15 at 5].  As a result of their efforts, over the next decade, Superdigital developed into a large and successful enterprise.

Starting in 2022, the parties and Superdigital began to migrate out of Massachusetts to

2

other states.  Plaintiff moved to California in September 2022 after his retirement from professional football, though he continues to own a condominium in Boston. [Id. at 4]. Defendant likewise moved from Massachusetts in 2023 and currently resides in Boca Raton, Florida. [Dkts. 15 at 7; 1-1 ¶ 17].  Superdigital likewise was relocated from Massachusetts to Delaware.  Specifically, on October 19, 2023, Defendant formed a separate corporate entity for Superdigital LLC in Delaware. [Dkt. 15-2].  One month later, Defendant filed a merger agreement between the original Massachusetts Superdigital entity and the newly formed Delaware entity, with the Delaware entity as the sole surviving corporation. [Id.].  The merger was filed in Massachusetts on December 5, 2023. [Id. at 3].

In Fall 2024, Defendant began exploring potential acquisition opportunities for Superdigital. [Dkt. 1-1 ¶ 76].  In or around August 2025, Defendant sold Superdigital to Accenture for approximately $50 million. [Id. ¶ 77].  Defendant did not personally inform Plaintiff of the sale, nor did he recognize the alleged partnership by providing Plaintiff with a share of the proceeds. [Id. ¶¶ 77, 80].  Plaintiff learned of the sale from a third-party while he was working on a project for Dunkin' Donuts with Defendant in Boston. [Id. ¶ 78].  At that time, Plaintiff confronted Defendant regarding the sale, resulting in a verbal altercation. [Id.].  To date, Plaintiff has not received any compensation for his alleged contributions to Superdigital.

On April 17, 2026, Plaintiff commenced this action in state court, asserting claims for quantum meruit/unjust enrichment, breach of fiduciary duty, and promissory estoppel, and seeking damages, declaratory relief, and an order of equitable accounting.  Defendant removed the case on May 6, 2026. [Dkt. 1].  On May 13, 2026, Defendant moved to transfer the action to the Southern District of Florida or, in the alternative, the District of Delaware.  Defendant simultaneously filed an Emergency Motion to Stay the action pending the resolution of his

3

Motion to Transfer. [Dkt. 13].  The Court granted the Motion to Stay, subject to any opposition from Plaintiff. [Dkt. 14].  Plaintiff opposed the Motion to Transfer. [Dkt. 15].  The Court held a motion hearing on June 12, 2026. [See Dkt. 20].

## II.    LEGAL STANDARD

A court may transfer a case under Section 1404(a) to "any other district or division where it might have been brought" if doing so is "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a).  The First Circuit has instructed that in evaluating a transfer request, a court must consider the following factors: (1) the convenience of the parties and the witnesses; (2) the availability of documents; (3) the possibility of consolidation; and (4) the order in which the court obtained jurisdiction. Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000).  Here, only the first and second factors are in dispute, as the third and fourth factors pertain to situations involving multiple parallel lawsuits, which are not at issue here.  In addition to these factors, courts also consider "any connection between the forum and the issues," "the law to be applied," and "the state or public interests at stake." First State Ins. Co. v. XTRA Corp., 583 F. Supp. 3d 313, 318 (D. Mass. 2022).  Moreover, "there is a strong presumption in favor of the plaintiff's choice of forum." Coady, 223 F.3d at 11 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).  The movant bears the burden of proving that transfer is warranted. See Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 423-24 (1st Cir. 1991).

## III.    DISCUSSION

After carefully considering each of the transfer factors under Section 1404(a), the Court finds that Defendant has not met his burden of demonstrating that transfer is warranted.[1]

---

[1] The parties agree that this action "might have been brought" in the Southern District of Florida, as the court would have personal jurisdiction over Defendant and venue would be proper because Defendant is a Florida resident. 28 U.S.C. § 1404(a).  However, the parties dispute whether the

### A.       Plaintiff's Choice of Forum

There is ordinarily a strong presumption in favor of a plaintiff's choice of forum. See

Coady, 223 F.3d at 11.  The presumption "applies with less force" where a plaintiff is not a

resident of the forum state, or the forum state has little connection to the action. Sinochem Int'l

Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007).

Here, Plaintiff chose to bring this action in Massachusetts, and his choice is entitled to

some weight, though not dispositive deference.  Plaintiff is no longer a resident of

Massachusetts, weakening the force of the presumption.  That said, Plaintiff previously resided

in Massachusetts for over a decade, including during the period relevant to the underlying facts

of this action, and he currently maintains residential property here.  Moreover, Massachusetts has

a clear connection to the facts of this case.  Until 2023, Superdigital's headquarters and place of

incorporation were in Massachusetts.  Defendant likewise resided in Massachusetts until 2023.

The Complaint alleges that Plaintiff and Defendant first met in this State, entered a business

partnership here, and that Plaintiff contributed to the business here, forming the basis of

Plaintiff's unjust enrichment and promissory estoppel claims.  Thus, although Plaintiff's current

residence in California diminishes the deference owed to his choice of forum, this case is unlike

those in which a plaintiff has never resided in the forum and the case bears only a tenuous

connection to the state. See, e.g., Bowen v. Elanes N.H. Holdings, LLC, 166 F. Supp. 3d 104,

108 (D. Mass. 2015) (declining to apply presumption where plaintiff never resided in forum and

the case otherwise had little connection to the forum); United States ex rel. Ondis v. City of

Woonsocket, 480 F. Supp. 2d 434, 437 (D. Mass. 2007) (same); Endurance Am. Ins. Co. v. John

District of Delaware would be a proper venue.  The Court does not reach the issue because, in
any event, the transfer factors under Section 1404(a) do not weigh in favor of transfer.

Moriarty & Assocs., Inc., No. 23-CV-12550, 2024 WL 3849670, at *4 (D. Mass. Aug. 16, 2024) (granting "some weight" to plaintiff's choice of forum where plaintiff did not file suit on its "home turf" but the forum nevertheless has "a connection to the operative facts of this case"). The Court thus finds that Plaintiff's choice of forum still merits weight.

Defendant contends that Plaintiff's choice of forum should not be granted any weight because Plaintiff allegedly engaged in forum shopping. According to Defendant, Plaintiff chose Massachusetts based on "tactical advantage," noting Plaintiff's popularity as an athlete for a local professional sports team. The Court is not persuaded by this argument. As another session of this court recently explained, a "plaintiff's choice of forum will not be considered forum shopping where there are connections between the facts of the case and the chosen forum." Dress v. Capital One Bank (USA), N.A., 368 F. Supp. 3d 178, 184 (D. Mass. 2019). As explained, the parties' dispute has sufficient factual connections with Massachusetts. Accordingly, the Court accords weight to Plaintiff's choice of forum.

### B.      Convenience of the Parties

Transferring the case to the Southern District of Florida and the District of Delaware would not materially increase overall convenience for the parties, and so this factor is "neutral." First State, 583 F. Supp. 3d at 319. For Defendant, the Southern District of Florida would be more convenient as his district of residency, but the District of Delaware would be approximately as inconvenient for him as Massachusetts. Moreover, Defendant's father allegedly resides in Massachusetts, presumably reducing Defendant's inconvenience through family ties to the State. For Plaintiff, California is approximately equidistant from Massachusetts, Florida, and Delaware. That said, Plaintiff represents that he maintains residential property in Massachusetts and that he travels to Massachusetts with some frequency, including at least four times between October

2025 and September 2026. By contrast, he does not claim to have property in Delaware or Florida or to travel frequently to either state. Massachusetts thus appears more convenient for Plaintiff than Florida or Delaware. Transferring would therefore, at least to some extent, merely "shift[] the inconvenience from one party to another." Momenta Pharms., Inc. v. Amphastar Pharms., Inc., 841 F. Supp. 2d 514, 523 (D. Mass. 2012) (citing Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 18 (D. Mass. 2002). The Court thus finds that this factor does not weigh for or against transfer.

### C.      Convenience of Witnesses

The convenience of witnesses is "probably the most important factor" in assessing a motion to transfer. Laconi v. Ghosh, No. 25-CV-10107, 2025 WL 3724848 (D. Mass. Dec. 24, 2025). "In considering this factor, the court looks at 'the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify.'" Boateng v. Gen. Dynamics Corp., 460 F. Supp. 2d 270, 275 (D. Mass. 2006) (quoting Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991)). The movant must "specify the witnesses to be called, accompanied by a general statement as to what their testimony will entail." Id. To demonstrate inconvenience, the movant must "show[] that witnesses were unwilling to come to trial," "that deposition testimony would be unsatisfactory," or that "the use of compulsory process would be necessary.'" Mar. VII Inv. Ltd. v. Kramer, No. 15-CV-11917, 2016 WL 4941985, at *2 (D. Mass. Sep. 14, 2016) (quoting Emps. Mut. Cas. Co. v. Bartile Roofs, Inc., 618 F.3d 1153, 1169 (10th Cir. 2010)).

Here, Plaintiff identifies nine Massachusetts-based nonparty witnesses who would testify as to facts relevant to his claims, which is sufficiently numerous and significant to weigh against transfer. For example, Plaintiff plans to call Pini Swissa, who Plaintiff alleges pitched

Superdigital to him and whose barbershop was the location of Plaintiff and Defendants' first introduction. [Dkt. 15 at 14-15].  Plaintiff also claims that four corporate witnesses—Dunkin' Donuts, Truly Hard Seltzer, Papa Gino's, and Wynn Casino—are in Massachusetts, and that these witnesses would testify as to statements Defendant made concerning Plaintiff's involvement in Superdigital during pitches as well as events leading up to these entities becoming customers of Superdigital. [Id.].  Plaintiff likewise claims that four current or former Superdigital employees reside in Massachusetts, including Ross Parker (a Superdigital account manager who attended pitches), Samuel Biggers (a former Superdigital account manager), Crystal Flynn (executive who worked on deals involving Superdigital), and Elizabeth Hannigan (Superdigital's former chief operating officer). [Dkt. 15 at 15].  In total, the number and relevance of these nine local witnesses is sufficient to weigh against transfer. See Laconi, 2025 WL 3724848, at *3 (finding convenience of witnesses disfavored transfer where plaintiff "identifie[d] two actual witnesses who have information about the issues in the case and who reside in Massachusetts"); cf. IMS Glob. Learning Consortium, Inc. v. Schs. Interoperability Framework Ass'n, No. 17-CV-10437, 2018 WL 662479 (D. Mass. Feb. 1, 2018) (granting transfer where plaintiff identified only two non-key witnesses in Massachusetts out of approximately twenty proposed witnesses).

Defendant, for his part, contends that eight additional nonparty witnesses are located out of state, including four in Florida, two in Delaware, one in Connecticut, and one in California. [See Dkt. 21 at 15-16].  This includes three corporations: Accenture, Superdigital, and Nuthouse; three individuals that Defendant contends are key witnesses: Rob Gronkowski (one-third owner of Nuthouse), Josh Grunberg (Superdigital's former chief of staff), and Chloe Cotoulas (adviser on the Superdigital sale); and two other individuals: Billy Grunberg and Kyler Schelling.

However, Defendant fails to "show[] that the cost of bringing [his] witnesses to Massachusetts will be unduly burdensome, [or] that any of [his] witnesses are unwilling or unable to appear." E.E.O.C. v. Tex. Roadhouse, Inc., No. 11-CV-11732, 2012 WL 5894910, at *2 (D. Mass. Nov. 9, 2012); Boateng, 460 F. Supp. 2d at 276 (noting that defendants "have made no allegations that [witness] would be unwilling or unable to appear in Massachusetts"). For example, Defendant has not averred that any of the proposed witnesses refuse to travel to Massachusetts, or that he is otherwise financially unable to secure their appearance in this District. Cf. Princess House, 136 F.R.D. at 20. Indeed, for four of the eight witnesses Defendant identifies, Massachusetts would be equally as convenient as or more convenient than Florida. Thus, when considered in conjunction with the nine Massachusetts-based witnesses that Plaintiff has identified, the convenience of witnesses weighs against transfer.

In response, Defendant argues that Plaintiff does not provide evidence that he could compel or persuade out-of-state nonparty witnesses to appear in Massachusetts. [See Dkt. 21 at 17, 19]. However, Defendant misunderstands the burden on a motion to transfer under Section 1404(a). Because Defendant seeks transfer, it is his burden of proof and persuasion to demonstrate that the convenience of witnesses warrants transfer, not Plaintiff's. See Mercier, 935 F.2d at 423-24. That burden is not met. Accordingly, the Court finds that this factor weighs against transfer.

### D.    Availability of Documents

The next factor, the availability of documents, has diminished in importance in light of modern electronic communications. See Riemer & Braunstein LLP v. Monroe Cap. Mgmt. Advisors LLC, No. 18-CV-12401, 2019 WL 2141821, at *6 (D. Mass. May 16, 2019) (observing that the location of evidence "has become less significant in light of technological advances that

allow documents to be stored and sent electronically"). Defendant contends that transfer is warranted because he maintains Superdigital's records in his residence in Florida. However, electronic records can be transmitted easily, and Defendant does not represent that any physical records cannot be digitized or otherwise transferred to Massachusetts at minimal cost. Cf. Stanley v. Am. Econ. Ins. Co., No. 24-CV-10622, 2025 WL 509498, at *5 (D. Mass. Feb. 14, 2025) (noting that party failed to "point[] to any other necessary evidence that will not be available electronically"). Thus, this factor does not support transfer.

### E.       Court Congestion

Finally, in evaluating a motion to transfer, courts may consider "the administrative difficulties flowing from court congestion." Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharms., Inc., 633 F. Supp. 3d 385 (D. Mass. 2022) (quoting Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex, 571 U.S. 49, 62 n.6 (2013)). Defendant highlights that the Southern District of Florida would be less burdened by this case and would resolve it more quickly than this Court. He notes that the Southern District of Florida had 3,847 pending civil cases in 2025, has 30 active district and senior district judges, and judges take, on average, 34.3 months to reach a disposition with court action. [Dkt. 12 at 13]. By contrast, the District of Massachusetts had 4,902 pending civil cases, has 18 judges, and judges take 59.9 months in median disposition time. [Id.]. The Court finds that these differences are not insignificant, and Defendant accordingly has demonstrated that transfer to the Southern District of Florida would promote efficiency. See IMS Glob. Learning, 2018 WL 662479, at *4 (citing statistics of the median time from filing to disposition of civil cases in the District of Massachusetts versus the Southern District of Ohio).

Balancing all Section 1404(a) factors together, the Court declines to transfer the action to

the Southern District of Florida or the District of Delaware.  Plaintiff's choice of forum warrants

some deference, and the convenience of witnesses—the most important factor—weighs against

transfer.  The convenience of the parties and the location of documents are, at best, neutral.  The

only factor in favor of transfer is reducing court congestion, but this single consideration is

insufficient to warrant the strong interests counseling against transfer.

## IV.    CONCLUSION

Accordingly, Defendant's [Dkt. 11] Motion to Transfer is **DENIED**.

**SO ORDERED.**

Dated: June 25, 2026                                      /s/ Angel Kelley
                                                         Hon. Angel Kelley
                                                         United States District Judge

11